72 F.3d 135
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Antonio G. HERNANDEZ, Petitioner-Appellant,
v.
Samuel LEWIS, et al., Respondents-Appellees.
 No. 94-17063.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 16, 1995.
Decided Dec. 14, 1995.
 
 1
 Before: SCHROEDER and ALARCON, Circuit Judges, and WHALEY,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Antonio G. Hernandez ("Hernandez") appeals from the district court's dismissal of his pro se petition for writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254.
 
 
 4
 Hernandez contends that his state court conviction cannot stand because he was deprived of his federal constitutional right to due process and equal protection. Specifically, he contends that (1) the prosecutor failed to provide a race-neutral explanation for the exercise of a peremptory challenge against an Hispanic juror, (2) the state trial judge erroneously admitted hearsay evidence, and (3) the prosecutor placed the prestige of his office behind the testimony of his witnesses.
 
 
 5
 We review de novo the dismissal of a petition for a writ of habeas corpus. Calderon v. Prunty, 59 F.3d 1005, 1009 (9th Cir.1995). We affirm because we conclude that none of the alleged errors had a substantial and injurious effect on the jury's verdict. We discuss each issue and the facts pertinent thereto under separate headings.
 
 
 6
 * Alleged Batson Error
 
 
 7
 Hernandez contends that the prosecutor exercised a peremptory challenge against an Hispanic juror on racial or national origin grounds in violation of Batson v. Kentucky, 476 U.S. 79 (1986). The record shows that the prosecutor exercised a peremptory challenge against an Hispanic juror. After defense counsel objected, the state trial court directed the prosecutor to state his reasons for exercising the peremptory challenge. The prosecutor replied that he exercised his peremptory challenge on five discrete grounds. The fact that the juror had a poor employment history and her part-time employment as a massage therapist indicated to him that she had an unstable personality. The juror's overly enthusiastic responses to the court's voir dire examination caused him to be concerned that she was too eager to serve on the jury. The juror's age and the fact that she was childless caused him to be concerned that she would be overly sympathetic to a youthful appearing defendant. The fact that the juror worked as a clerk during the day and as a massage therapist in the evening caused him to be concerned that she would not be an alert and effective juror because of her work schedule. The prosecutor also stated that the failure of the juror to disclose that she had prior jury experience raised questions in his mind concerning whether she had been forthright in her responses to the court's questions. The state trial court pointed out that the juror had disclosed her prior jury service in a San Francisco civil trial.
 
 
 8
 The state trial court found that the prosecutor's reasons for challenging the juror were "trial related" and race-neutral. The Supreme Court instructed in Batson that a reviewing court must accord great deference to a trial court's finding that the prosecutor had a non-race-based reason for exercising the peremptory challenge. Batson, 476 U.S. at 98, n. 21; Hernandez v. New York, 500 U.S. 352, 364-365 (1991). In Hernandez, the court stated that we must show deference because the trial judge is in the best position to evaluate the demeanor and credibility of the prosecutor. Hernandez, 500 U.S. at 365.
 
 
 9
 The state trial court's determination that the prosecutor did not exercise a peremptory challenge based on the race or national origin of the juror is a question of fact. Because we are reviewing a state prisoner's petition filed pursuant to 28 U.S.C. Sec. 2254, a state court's findings are presumed to be correct. 28 U.S.C. Sec. 2254(d) (1994). The factual assertions made by the prosecutor are undisputed.
 
 
 10
 In United States v. Chinchilla, 874 F.2d 695 (9th Cir.1989), we held that a reviewing court must determine whether any of the objective reasons offered by the prosecutor are false by comparing the responses of the juror challenged by the prosecutor with those of the jurors who remained on the panel. Id. at 698.
 
 
 11
 We have reviewed the reporter's transcript of the voir dire examination. None of the jurors who remained on the jury disclosed a comparable employment record, were currently working at two jobs, had not borne children by the age of 41 years, or expressed an excessive eagerness to serve as a juror in this matter. Our comparative analysis did not disclose objective evidence of discrimination on the basis of race or national origin.
 
 
 12
 The state trial court credited the prosecutor's subjective reasons for exercising the peremptory challenge. "[S]ubjective factors may play a legitimate role" in exercising a peremptory challenge. Burks v. Borg, 27 F.3d 1424, 1428 (9th Cir.1994), cert. denied, 115 S.Ct. 1122 (1995). Mindful of our duty to defer to the trial judge's credibility findings, we conclude that Hernandez has failed to demonstrate that the prosecutor exercised a peremptory challenge against the Hispanic juror because of her race or national origin.
 
 II
 
 13
 Admissibility Of the Extra-Judicial Statement
 
 
 14
 Hernandez maintains that the admission into evidence of an extra-judicial statement violated his Sixth Amendment right to confrontation. The trial court permitted a witness to testify, over objection, that after he heard someone state that "others" were going to beat up Jewl Briggs, he told the bartender to warn Briggs. The trial court ruled that the extra-judicial statement would be received to show the effect it had on the bartender and Briggs, not for the truth of matter asserted. Defense counsel did not request a limiting instruction.
 
 
 15
 An extra-judicial statement that is not admitted for the truth of the matter asserted does not violate the confrontation clause. United States v. Lujan, 936 F.2d 406, 410 (9th Cir.1991). The trial court's evidentiary ruling did not deprive Hernandez of a federally protected right.
 
 III
 Prosecutorial Misconduct
 
 16
 Hernandez argues that during his closing argument, the prosecutor placed the integrity of his office behind the testimony of his witnesses in violation of the due process clause. Defense counsel did not object to the prosecutor's vouching comments. In response to defense counsel's argument that a prosecution witness had a motive to lie because the state had dismissed a charge that he had murdered Briggs, the prosecutor argued "you don't charge such a serious crime of murder unless you have the proof and the evidence to back it up." The prosecutor also told the jury: "If he hadn't shot and killed Jewl, the defendant wouldn't be here."
 
 
 17
 These comments placed the integrity of the prosecutor's office behind the veracity of its witnesses, and improperly suggested to the jury that Hernandez was on trial because the state had evidence in its possession that demonstrated that he was guilty of murder. Long ago, the Supreme Court condemned this form of misconduct in Berger v. United States, 295 U.S. 78, 88 (1935).
 
 
 18
 The fact that defense counsel did not object to these statements does not preclude federal review of their impact on Hernandez's right to due process. The Arizona Court of Appeals reviewed the merits of the vouching claims, notwithstanding the absence of a contemporaneous objection. In reviewing the effect of a violation of a state prisoner's federal constitutional right to due process, we must determine whether the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, --- U.S. ----, 113 S.Ct. 1710, 1714 (1993). To fulfill this responsibility we have reviewed the state court record. The evidence presented by the prosecution was overwhelming.
 
 
 19
 Michael Villareal testified he saw Hernandez with a gun prior to the homicide. Later, he saw Hernandez follow the victim out of the bar and argue with him. Hector Mendoza saw Hernandez shoot Briggs several times after calling him a "narc." After the first shot, Briggs stated "don't shoot. Please don't shoot." Mendoza heard Danny Carrizosa tell Hernandez "kill him so he won't talk." Hernandez shot the victim again.
 
 
 20
 Ralph Chayrez testified that Hernandez came to his house shortly after the shooting. Hernandez asked Chayrez to drive him to the area where the shooting occurred. En route, Chayrez saw a gun in Hernandez's lap. When they arrived at the scene, Hernandez said what he was going to "shoot the cops." Chayrez immediately drove Hernandez away.
 
 
 21
 The record also shows that following the prosecutor's improper comments, the trial court instructed the jury that statements made during argument by counsel were not evidence. The jury was admonished that it was their duty to "decide the accuracy of each witness' testimony." The massive strength of the prosecution's case has persuaded us that the prosecutor's vouching comments did not have a substantial and injurious effect on the jury's deliberations.
 
 
 22
 AFFIRMED.
 
 
 
 *
 Honorable Robert H. Whaley, United States District Judge, for the Eastern District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3